IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

AIRFACTS, INC.

:

    v.                       :   Civil Action No. DKC 15-1489

:

DIEGO DE AMEZAGA

:

## MEMORANDUM OPINION

Presently pending and ready for resolution in this case is a motion for leave to file an amended complaint filed by Plaintiff AirFacts, Inc. ("AirFacts" or "Plaintiff"). (ECF No. 33). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion will be denied.

## I. Background

Plaintiff commenced this action on May 22, 2015 by filing a complaint against Defendant Diego de Amezaga ("Defendant") alleging breach of contract, misappropriation of trade secrets, and conversion. (ECF No. 1). Plaintiff is a Maryland corporation that develops and licenses revenue accounting software for airlines, and the company concentrates primarily on developing customized airfare auditing software, specifically proration software. (*Id.* ¶ 14). Proration software assists airlines in receiving revenue that accurately reflects industry standards and negotiated rates when two or more airlines share

ticket revenues in a single transaction. (*Id.* ¶¶ 15-16). This software, according to Plaintiff, is in high demand and therefore has been a critical focus of Plaintiff's development team. Plaintiff avers:

> AirFacts has invested significant technical and management resources easily valued in the six figures to develop significant proprietary information relating to the Proration Software. For example, the entire AirFacts technical team and the product development director and CEO have had several intense code sprints to produce a prototype that has been integrated into the existing audit product.

(*Id.* ¶ 18).

Plaintiff employed Defendant from June 2008 until February 2015 during which time Defendant worked on the development of this proration software. (*Id.* ¶ 19). According to Plaintiff, Defendant, in addition to providing Plaintiff's development team with functional and technical specifications for how the custom audit programming should operate, was also "principally responsible for developing AirFacts' Proration Software from the program's inception in April 2012." (*Id.* ¶¶ 20-21). Defendant disputes this fact and contends that he did not spend very much time on the project and was primarily a business analyst, not a programmer. (ECF No. 14 at 1-2).

At the start of Defendant's employment with Plaintiff, the parties executed an Employment Agreement. (ECF No. 2-6). The Employment Agreement restricted Defendant's post-employment

opportunities for a twelve-month period and prohibited Defendant from making unauthorized use or disclosure of certain confidential company information. (ECF No. 1 ¶ 26-28). Specifically, the Employment Agreement provides:

> During or after the term of his engagement with AirFacts, the Employee will not make any unauthorized use of, will not disclose, and will maintain in secrecy and in confidence, as the secret and sole property of AirFacts, any Confidential Information. The Employee will not, in any event, disclose or use any Confidential Information, or information or knowledge described immediately above, unless the Employee receives specific permission in writing from the President of AirFacts to disclose or use such Confidential Information . . . such information shall remain the sole property of AirFacts and Consultant agrees to return all such property (including all copies and summaries) upon request and/or upon the termination of this Agreement. It is the express intent of this Agreement that Consultant not disclose to any third party Confidential Information learned in the performance of Services hereunder concerning the business of AirFacts or its clients.

(ECF No. 2-6 ¶ 2.2). Approximately three months after Defendant stopped working with Plaintiff, he began working for American Airlines, one of Plaintiff's major customers. American Airlines assured Plaintiff that Defendant was not performing services that were in competition with, or similar to, services that he provided for Plaintiff, which the Employment Agreement would restrict. Defendant maintains that his work at American Airlines was restricted to processing passenger refunds in the

Refund Department and did not involve performing any services that were in breach of the Employment Agreement.  (ECF No. 14, at 3).

Plaintiff alleges that Defendant stole confidential information, specifically "spreadsheets and database table designs for an essential component of the Proration Software," which Defendant allegedly sent to himself on his private email server.  (ECF No. 1 ¶ 30).  Plaintiff contends that:

> Due to the highly confidential and proprietary nature of the Confidential Information, the significant amount of time and resources that AirFacts has invested in developing the Proration Software, and the importance of the Proration Software to AirFacts' future business plans, the use and/or disclosure of the Confidential Information to a third party would cause irreparable harm to the Company.

(*Id.* ¶ 32).

Upon learning that Defendant possessed these documents after his termination, Plaintiff commenced the present action and contemporaneously filed a motion for a temporary restraining order and preliminary injunctive relief.  (ECF Nos. 1; 2).  The court held a motions hearing and granted the temporary restraining order.  The order temporarily restrained and enjoined Defendant from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any document that related to his employment with Plaintiff or any document or

electronically stored information belonging to or received from
Plaintiff.  (ECF No. 4).

Defendant subsequently retained counsel, filed an answer to
the complaint (ECF No. 9), and responded in opposition to
Plaintiff's motion for a preliminary injunction (ECF No. 14).
Upon the consent of the parties, the court granted a preliminary
injunction ordering Defendant to return and not retain originals
or copies of any property, including confidential information,
obtained from Plaintiff.  (ECF No. 23).  The order also required
Defendant to provide Plaintiff access to all electronic devices
for forensic evaluation.  On April 12, 2016, following the
ordered forensic evaluation but before the close of discovery,
Plaintiff filed the pending motion for leave to file an amended
complaint, which seeks to add a claim of unjust enrichment and
add additional factual allegations.  (ECF No. 33).  Defendant
responded in opposition (ECF No. 34), and Plaintiff replied (ECF
No. 35).

## II.  Standard of Review

The deadline established by the scheduling order for the
amendment of pleadings was December 28, 2015.  (ECF No. 25).
Subsequent amendments to the scheduling order extended discovery
deadlines but did not alter the deadline for the amendment of
pleadings or the addition of parties.  (*See* ECF Nos. 29; 36).
Consequently, Plaintiff must do more than satisfy the liberal
standard of Fed.R.Civ.P. 15(a); it must first meet the mandates

of Fed.R.Civ.P. 16(b)(4), which calls for "good cause" to modify a scheduling order. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008); *Elat v. Ngoubene*, 993 F.Supp.2d 497, 519-20 (D.Md. 2014).

"A schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4); *see Nourison*, 535 F.3d at 298 ("[D]istrict courts require the effective case management tools provided by Rule 16.  Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.").  The movant satisfies the good cause requirement by showing that, despite due diligence, it could not have brought the proposed claims in a reasonably timely manner. *See Montgomery v. Anne Arundel County, Md.*, 182 F.App'x 156, 162 (4th Cir. 2006); *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D.Md. 2002); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D.Md. 1999) ("Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." (citation and internal quotation marks omitted)).  The factors courts consider in determining good cause are the "danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." *Tawwaab v. Va. Linen Serv., Inc.*,

729 F.Supp.2d 757, 768-69 (D.Md. 2010) (citation and internal quotation marks omitted).  As Judge Williams explained:

> Courts in the [United States Court of Appeals for the] Fourth Circuit deny leave to amend a complaint past the deadline established by a scheduling order where the moving party has been careless in developing his claims or where he has failed to satisfactorily account for his failure to do so.  *Compare Whichard v. Specialty Restaurants Corp.*, 220 F.R.D. 439, 441 (D.Md. 2004) (denying plaintiff's motion to join an additional defendant five months after the court imposed deadline because plaintiff had ample notice before the deadline that the original defendant might not be the right party) with *Long v. Blair*, No. 2:09-CV-00349, 2010 WL 1930220 (S.D.W.Va. May 12, 2010) (holding that good cause existed where the plaintiff did not establish a sufficient evidentiary basis to support new claims until after the deadline for amending his complaint and moved to amend immediately after the new evidence came to light).

*Id.* at 769.  The dictates of Rule 16(b) are not to be taken lightly, as "a judge's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  *Potomac Elec.*, 190 F.R.D. at 375 (citation and internal quotation marks omitted).

If Rule 16(b) is not satisfied, there is no need to consider Rule 15(a).  *See Nourison*, 535 F.3d at 299.  Once the movant has met the burden of showing good cause, however, the inquiry shifts to Rule 15(a), which provides that "court[s] should freely give leave [to amend a pleading] when justice so requires."  Fed.R.Civ.P. 15(a)(2).  Denial of leave to amend is

appropriate "*only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis in original) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).  Leave to amend may be denied as futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules," including federal pleading standards. *Katyle v. Perm Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)).

**III. Analysis**

Plaintiff's proposed amended complaint seeks to add both a claim of unjust enrichment and additional factual allegations concerning Defendant's alleged theft of TicketGuard auditing software, which Plaintiff purports to have learned through discovery.  In its motion, Plaintiff addresses only the liberal standards of Rule 15(a) regarding amendments to pleadings rather than Rule 16(b)'s more stringent standard.  Plaintiff argues that the amendments "are necessitated by information that was uncovered as the result of a forensic examination that was ordered by this Court and was indispensable to understanding the full extent of the conduct at issue." (ECF No. 33, at 2). Plaintiff also notes that the unjust enrichment claim is an "alternate theory of recovery that is *based on the same*

8

*underlying facts* in this case." (*Id.* (emphasis in original)). Although Defendant also objects to Plaintiff's proposed amendment on the basis Rule 15(a), Plaintiff still must show good cause under Rule 16(b) to amend the scheduling order. *See Nourison*, 535 F.3d at 298 ("Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard *must be satisfied* to justify leave to amend the pleadings." (emphasis added)).

### A. Unjust Enrichment Claim

Plaintiff argues that the amendments "are necessitated by information that was uncovered as the result of a forensic examination that was ordered by this Court and was indispensable to understanding the full extent of the conduct at issue." (ECF No. 33, at 2). This argument is unavailing as it relates to the proposed unjust enrichment claim. Although it may be true that discovery helped Plaintiff articulate this theory, Plaintiff has not demonstrated that the newly discovered facts form the basis of the unjust enrichment claim. In fact, Plaintiff admits that the unjust enrichment claim is an "alternate theory of recovery that is *based on the same underlying facts* in this case." (*Id.* (emphasis in original)).

Plaintiff's admission that it was aware of the basic facts relevant to the unjust enrichment claim before the scheduling

order deadline shows a lack of diligence in asserting that claim. Plaintiff could have included the unjust enrichment claim when it commenced this action, and certainly before the expiration of the scheduling order deadline. Instead, Plaintiff waited until more than three months after the scheduling order deadline to seek leave to amend the complaint. Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard." *W. Virginia Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va 2001); *see Montgomery v. Anne Arundel Cnty., Md.*, 182 F.App'x 156, 162 (4th Cir. 2006) (per curiam). Plaintiff offers no justification for its substantial delay in seeking to include the unjust enrichment claim, and the potential to pursue such an alternate theory of recovery came as no surprise to Plaintiff. Where, as here, a party seeking modification has not established a sufficient reason for the modification, the court need not consider any other arguments made by the movant. *See Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995) ("If the party was not diligent, the inquiry should end."). Accordingly, Plaintiff's motion for leave to add a claim of unjust enrichment will be denied.

## B. Additional Factual Allegations

Plaintiff also seeks to amend its complaint to add factual allegations that it contends first came to light in the course of discovery. Specifically, Plaintiff seeks to add references

to TicketGuard auditing software as confidential information
that Defendant also mishandled and stole. Defendant disputes
Plaintiff's contention that this information was revealed during
discovery and argues that Plaintiff made reference to alleged
facts concerning TicketGuard software in September 2015. (ECF
No. 34, at 2). Plaintiff does not offer a direct response to
this argument in its reply.

Here, as above, Plaintiff fails to argue, much less
establish, that good cause exists to grant leave to amend to
allow Plaintiff to add the factual allegations regarding
TicketGuard. Plaintiff had three months after issuance of the
preliminary injunction until the scheduling order's deadline to
seek leave to amend the complaint or move to amend the
scheduling order's deadline, but Plaintiff failed to do either
and provides no reason for such failure. In addition, Defendant
is correct that Plaintiff was on notice that Defendant worked
with TicketGuard software when he explicitly noted this fact in
his response in opposition to the preliminary injunction, which
was filed in August 2015. (*See* ECF No. 14, at 2). Finally,
Plaintiff had access to the e-mail that Defendant allegedly sent
himself containing the software information as early as May
2015. (ECF No. 2-8).

Although it is possible that Plaintiff learned of new facts
regarding TicketGuard after the scheduling order deadline,
Plaintiff has not sufficiently articulated such or shown

diligence in uncovering the relevant facts and moving for leave to amend. Because Plaintiff has the burden of showing good cause for modification of the scheduling order, the court is not inclined to speculate on Plaintiff's behalf simply because Plaintiff's counsel failed to advance arguments regarding Rule 16(b)'s standard. Accordingly, Plaintiff's motion will be denied with regard to the new factual allegations.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for leave to file an amended complaint will be denied. A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
